**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| U-Haul Company of Arizona,<br><br>Plaintiff,<br><br>v.<br><br>Tammy Lee, et al.,<br><br>Defendants. | No. CV-20-00082-PHX-ROS<br><br>**ORDER** |

Plaintiff U-Haul Company of Arizona filed this interpleader action hoping to prevent a variety of separate tort suits that might be filed against it in Iowa, Texas, Arizona, or elsewhere.  The Supreme Court established in 1967 that U-Haul's strategy is not an appropriate use of the federal interpleader statute when potential tort claimants would prefer to proceed elsewhere.  Because Defendants have indicated they wish to proceed elsewhere, this suit cannot provide the relief U-Haul is after.  This suit can proceed, however, in the limited capacity of determining who is entitled to the amount deposited by U-Haul.

## BACKGROUND

The background facts are undisputed.  As of October 2019, Brian King was a citizen of Arizona and his mother, Judith King, was a citizen of Iowa.  In early October, Brian traveled to Iowa to help Judith move to Arizona.  On October 3, 2019, Judith rented a U-Haul van to transport her belongings and a "tow dolly" to transport her car.  The tow dolly was not equipped with brakes.  The rental contract specified that U-Haul "provide[d]

[Judith] with minimum limits of protection required by that state or province where arises any claim, suit or cause of action." Judith remained responsible for "any and all liability that exceed[ed] the applicable minimum limits of protection for that state or province." (Doc. 1-3 at 3).

On October 5, 2019, Brian was driving the U-Haul van to Arizona with the tow dolly attached. Judith was a passenger. While passing through Texas, Brian crossed over the center median and crashed head-on into a tractor trailer driven by Gurmeet Singh. That collision caused another tractor trailer to rear-end Singh's vehicle. That second tractor trailer was being driven by Gregory Sean with Robert Webster as a passenger. Brian and Judith were killed. Singh, Sean, and Webster were injured.

On January 13, 2020, U-Haul initiated the present action by filing its "complaint in interpleader." (Doc. 1). That complaint names nine defendants:

1. Tammy Lee (Judith's daughter);

2. Amanda King (Brian's wife);

3. Gurmeet Singh;

4. Gregory Sean;

5. Robert Webster;

6. Lynn Trucking Inc. (the owner of the truck driven by Singh);

7. Mountain River Trucking Inc. (the owner of the truck operated by Sean);

8. Progressive Commercial Casualty Co. (Singh's insurer); and

9. Starr Indemnity & Liability Co. (Sean's insurer).

U-Haul's complaint explains that it views the contractual provision stating it would provide Judith with the "minimum limits of protection" as providing a type of "insurance." U-Haul originally alleged Arizona "has the most significant relationship to this case" and, therefore, Arizona's minimum insurance coverage laws should apply. (Doc. 1 at 5). Pursuant to Arizona law, "the minimum amount of motor vehicle liability insurance coverage . . . is $40,000." (Doc. 1 at 6).

U-Haul's original position was that Judith had $40,000 of "insurance" against which

the nine defendants might make conflicting claims. "To avoid protracted, inefficient litigation," U-Haul requested it be allowed to deposit the $40,000 and have the Court determine the appropriate recipients. U-Haul's complaint, however, did not limit this suit to the $40,000.

In describing the relief it was seeking, U-Haul requested the Court enjoin the defendants "from instituting or maintaining any action against" U-Haul to recover the $40,000. (Doc. 1 at 8). But U-Haul also requested the Court discharge U-Haul "from *all liability* to the Defendants arising out of" the traffic accident. (Doc. 1 at 8) (emphasis added). In other words, U-Haul's complaint explicitly requested the Court limit U-Haul's liability arising from the accident to $40,000. As explored later, U-Haul has since abandoned that broad request.

Shortly after the complaint was filed, the Court granted U-Haul's request to deposit $40,000, which U-Haul did. (Doc. 11). U-Haul had some difficulty completing service of process on the defendants but, eventually, all nine were served. Over time, five defendants filed motions to dismiss while four defendants filed answers. Some of the answering defendants alleged Texas law, not Arizona law, should apply. (Doc. 41 at 3). Those assertions prompted U-Haul to change positions and agree that "Texas's minimum automobile financial responsibility limits should apply." (Doc. 72 at 2). Thus, U-Haul sought leave to deposit an additional $45,000 because Texas law requires minimum coverage of at least $85,000. The Court granted leave and U-Haul deposited the additional $45,000, meaning there is $85,000 currently on deposit with the Clerk of Court.

As for the five motions to dismiss, there is substantial overlap among them. In general, all five motions argue U-Haul is misusing the interpleader process. The motions point out that litigation is planned directly against U-Haul based on its alleged negligence in renting the tow dolly without brakes. According to the motions, interpleader cannot be used by a stakeholder, like U-Haul, who may be found liable for losses beyond the amount deposited. In addition to that argument, one motion argues personal jurisdiction and venue are lacking.

U-Haul opposes the motions to dismiss, claiming it has "brought a model interpleader action in good faith." (Doc. 66 at 3). According to U-Haul, it has no way of knowing who is entitled to the "insurance" proceeds it deposited. Given that uncertainty, U-Haul claims it is entitled to proceed under the interpleader statute. U-Haul abandons the portion of its complaint seeking to limit its liability to the amount deposited. Instead, U-Haul now concedes Defendants are free to assert counterclaims against it and those counterclaims will not be limited to the amount deposited. In fact, U-Haul argues any claims Defendants might wish to bring against it "must be brought in this action as a compulsory counterclaim." (Doc. 68 at 3). Finally, U-Haul argues personal jurisdiction and venue exist given the liberal rules applicable to interpleader actions.

At the time the motions to dismiss were filed, no other litigation had been initiated. After the motions were briefed, Tammy Lee and Amanda King filed suit in Iowa state court against a different U-Haul entity as well as "Sport Wade, Inc.," the U-Haul affiliate in Iowa where Judith rented the van and tow dolly. Lee and King indicate they "intend to join U-Haul of Arizona in the pending Iowa action" once this Court determines they are permitted to do so. (Doc. 67 at 2).

## ANALYSIS

U-Haul initiated this action pursuant to the federal interpleader statute, 28 U.S.C. § 1335. That statute confers federal jurisdiction over an interpleader action when there is more than $500 at stake and there are two or more "adverse claimants, of diverse citizenship" who "are claiming or may claim" an interest in the money. 28 U.S.C. § 1335(a)(1). This "require[s] only 'minimal diversity,' that is, diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967). Here, there is $85,000 at stake and minimal diversity exists because Tammy Lee is alleged to be a citizen of Arizona and Gurmeet Singh is alleged to be a citizen of California. Thus, the basic requirements under the interpleader statute are met.

As for personal jurisdiction, a statute authorizes nationwide service of process in

interpleader actions, "which means that the district court has personal jurisdiction over all defendants that have been properly served, even if they lack minimum contacts with the forum state." *Farmers New World Life Ins. Co. v. Adams*, No. CV 13-85-BU-DLC, 2014 WL 4715521, at *3 (D. Mont. Sept. 22, 2014). Because all defendants have been properly served, the Court has personal jurisdiction over all Defendants. And on the topic of venue, an interpleader action "may be brought in the judicial district in which one or more of the claimants reside." 28 U.S.C.A. § 1397. Tammy Lee resides in Arizona, making venue proper in Arizona.

Turning to the merits, much of the briefing is centered on an argument that U-Haul has abandoned. As noted earlier, the complaint sought to "[d]ischarge [U-Haul] from all liability to the Defendants arising out of" the accident other than the $85,000 deposited. (Doc. 1 at 8). Multiple Defendants argued that was an improper use of interpleader because it is well-established that interpleader is not meant "to bestow upon the stakeholder immunity from liability for damages that are unrelated to the act of interpleading." *Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1010 (9th Cir. 2012) (quoting 44B Am. Jur. 2d Interpleader § 4). Tacitly conceding the point, U-Haul has retreated from the relief it sought in the complaint and explains it is seeking interpleader protection only regarding the $85,000 it deposited.

After conceding it is no longer seeking protection beyond the $85,000, U-Haul argues any claims regarding U-Haul's own negligence must be brought as compulsory counterclaims. Thus, the real purpose behind U-Haul filing this action appears to be its belief there is a legal way to consolidate all possible tort suits it might face into a single action. That is, U-Haul would have the Court require Defendants bring all possible tort or non-tort claims they might have against U-Haul as counterclaims in this action. The Supreme Court has rejected this tactic as an improper use of the interpleader statute.

In *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523 (1967), "the insurer of a truck driver whose vehicle had collided with a bus brought an interpleader action in federal court in Oregon. Many of the bus passengers had been injured and several suits

had been filed against the drivers and owners of the two vehicles in California state courts." *Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1010 (9th Cir. 2012). The insurer alleged in the interpleader proceeding that "the actions already filed in California and others which it anticipated would be filed far exceeded" $20,000, "the amount of its maximum liability under the policy." *Id.* Thus, the insurer sought to have all the possible claimants "establish their claims against the driver and his insurer" in the interpleader proceeding. *Id.* The district court issued an injunction requiring litigation of all tort claims in the interpleader proceeding. The Supreme Court concluded that was an impermissibly broad use of the interpleader statute.

According to the Supreme Court, the insurer could not use a federal interpleader action "to determine that dozens of tort plaintiffs must be compelled to press their claims . . . in a single forum of the insurance company's choosing." *Tashire*, 386 U.S. at 535. The interpleader "statutory scheme" does not allow for "the tail . . . to wag the dog in this fashion." *Id.* This "view of interpleader means that it cannot be used to solve all the vexing problems of multiparty litigation arising out of a mass tort. But interpleader was never intended to perform such a function, to be an all-purpose 'bill of peace.'" *Id.* Therefore, the insurer was entitled to proceed with the interpleader only to the extent that the interpleader court would resolve the proper disposition of the $20,000 policy proceeds. The numerous tort claimants were free to pursue their claims in the forums of their choosing.

After *Tashire*, district courts across the country have ruled interpleader cannot be used to centralize tort suits. When tort claimants do not wish to proceed with their claims in the interpleader action, they must be allowed to proceed with their independent claims in the forum of their choosing. For example, after an airplane collision where fourteen people died, "[a] number of state court lawsuits" were filed "by the personal representatives of the deceased passengers." *Reliance Nat. Ins. Co. v. Great Lakes Aviation, Ltd.*, 12 F. Supp. 2d 854, 855 (C.D. Ill. 1998). Later, the insurer of one of the aircrafts filed a federal interpleader action. *Id.* The defendants in the interpleader were the passengers killed in

the collision, the owners of both aircrafts, the manufacturer of both aircrafts, and others. The manufacturer and owners then filed cross-claims in the interpleader action against other defendants, seeking contribution in the event the manufacturer or owners were found liable.  The district court dismissed the cross-claims, explaining "*Tashire* limits the use of interpleader to proration of the funds deposited with the Court and does not admit its use as a joinder device to bring trials on liability into a single court." *Id.* at 857.  *Tashire* "leaves injured parties free to bring their actions on liability in whatever courts they choose." *Id.* at 857.

In another suit involving a traffic accident where multiple individuals were killed or injured, the injured parties filed a state court suit against the driver who had caused the accident. *Mid-Am. Indem. Co. v. McMahan*, 666 F. Supp. 926, 927 (S.D. Miss. 1987).  The insurer of the driver then filed a federal interpleader action.  The insurer deposited the full amount of its policy and requested the court enjoin all other suits against the driver.  *Id.* The district court concluded interpleader regarding the policy amount was proper but the requested injunction was not.  The court explained, per *Tashire*, interpleader "cannot be utilized . . . as a device to impede the claimants' ability to recover judgments against the insured" in the forum of their choosing.  *Id.* at 929.  *See also Carolina Cas. Ins. Co. v. Mares*, 826 F. Supp. 149, 155 (E.D. Va. 1993) (noting *Tashire* means a "district court may not enjoin the interpleader defendants from prosecuting their claims against the insureds in a forum, of their own choice"); *Companion Prop. & Cas. Ins. Co. v. Boden*, No. 3:12-CV-00593-CRS, 2012 WL 6488751, at *3 (W.D. Ky. Dec. 13, 2012) (allowing interpleader but denying request to enjoin suits against tortfeasor); *Buckeye State Mut. Ins. Co. v. Moens*, 944 F. Supp. 2d 678, 696 (N.D. Iowa 2013) (holding a "federal interpleader action does not authorize consolidation of all related tort actions into a single action").

These cases all involve an insurance company depositing the limits of its policy and that is not the situation here.  Instead, U-Haul self-insures.  But that distinction is immaterial as it would make no sense to allow a self-insured entity to consolidate all tort suits while an insured entity could not.  Thus, the crucial aspect of the various post-*Tashire*

1    cases is their holding that an interpleader action cannot be used as a round-about way of

2    forcing litigation of tort claims into a single forum.

3          U-Haul attempts to avoid this conclusion by arguing *Tashire* is a "fifty-year old case

4    with highly circumstantial facts." (Doc. 29 at 11).  U-Haul explains *Tashire* involved many

5    suits that had already been filed while, here, there were no other suits pending at the time

6    U-Haul filed its interpleader complaint.  (Doc. 29 at 12).  U-Haul does not explain why

7    *Tashire* should be read as encouraging a race to the courthouse such that interpleader

8    practice varies dramatically depending on whether the interpleader complaint is filed

9    before or after the tort complaints.  The better reading of *Tashire* is that it does not allow

10   for consolidation of all tort claims, regardless whether the interpleader or tort suits are filed

11   first.

12         U-Haul also argues the "modern approach" to interpleader is contrary to *Tashire*

13   and allows for compulsory counterclaims to be resolved in the interpleader action.  (Doc.

14   29 at 12).  Modern practice does recognize "when the stakeholder is an interested party and

15   when one of the claimants asserts that the stakeholder is independently liable to him, the

16   interposition of a counterclaim is appropriate."  *Lee v. W. Coast Life Ins. Co.*, 688 F.3d

17   1004, 1009 (9th Cir. 2012).  Often "the counterclaim will be compulsory and the court will

18   exercise supplemental jurisdiction over it."  *Id.*  But U-Haul does not cite any authority

19   exploring this point in the context of multiple tort claimants subject to the guidance of

20   *Tashire*.  Moreover, even if the Court were to agree that the possible claims against U-Haul

21   qualify as compulsory counterclaims, that would not have the impact U-Haul seems to

22   assume.

23         If Defendants' tort claims against U-Haul were deemed compulsory counterclaims,

24   Defendants would still be free to pursue those claims in state court while this litigation

25   proceeded.  That is, the Anti-Injunction Act, 28 U.S.C. § 2283, means "if a party asserts a

26   claim in a state court that should be a compulsory counterclaim in an already pending

27   federal action, the federal court cannot enjoin the prosecution of the state proceeding."

28   Compulsory Counterclaims—Effect of Asserting a Compulsory Counterclaim as a Claim

in Another Action, 6 Fed. Prac. & Proc. Civ. § 1418 (3d ed.).  *See also Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 855 n.5 (9th Cir. 1981) ("[A] federal court is barred by § 2283 from enjoining a party from proceeding in state court on a claim that should have been pleaded as a compulsory counterclaim in a prior federal suit.").  U-Haul might argue the interpleader statute provides the relevant exception from the Anti-Injunction Act.  But it is clear from *Tashire* that the Court cannot issue an injunction, under the guise of interpleader procedure, prohibiting litigation of the tort claims in the forums of Defendants' choosing.

The fact that Defendants' possible tort claims against U-Haul might qualify as compulsory counterclaims raises the possibility that those claims would be barred if the present case proceeds to final judgment before the state court proceedings.  *See, e.g.*, *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 882 (5th Cir. 1998) (party's failure to bring tort claim in earlier interpleader action meant tort claim was barred).  But that does not appear possible.  Determining the proper recipients of the amount deposited likely will depend on the outcome of the other litigation planned against U-Haul.  At any rate, the Court need not address that issue now.  For present purposes, it is enough that U-Haul is not entitled to channel and control litigation of all Defendants' tort claims into the present suit.[1]

The final question, therefore, is how this case should proceed.  Because U-Haul has met the statutory prerequisites for interpleader, the motions to dismiss must be denied.  But instead of requiring answers from the parties who moved to dismiss, all parties will be directed to confer and file a joint status report indicating how they wish to proceed.  In particular, the parties must address whether this case should be stayed pending final resolution of all related proceedings.[2]

---

[1]  Existing caselaw indicates the only possible protection for U-Haul is an injunction prohibiting Defendants from seeking to recover the funds deposited by U-Haul except in this interpleader proceeding itself.  *See Buckeye State Mut. Ins. Co. v. Moens*, 944 F. Supp. 2d 678, 702 (N.D. Iowa 2013); *Mid-Am. Indem. Co. v. McMahan*, 666 F. Supp. 926, 929 (S.D. Miss. 1987).

[2]  It is unclear whether U-Haul has named as defendants all possible claimants to the amount it deposited.  For example, Singh's spouse (if married) or Brian King's children may have claims against the deposited funds.  The parties' status report should specify whether they

1      Accordingly,

2      **IT IS ORDERED** the Motions to Dismiss (Doc. 23, 24, 55, 59, 64) are **DENIED**.

3      **IT IS FURTHER ORDERED** the answer deadline for the parties who moved to

4 dismiss is **STAYED** pending further order of the Court.

5      **IT IS FURTHER ORDERED** no later than **October 2, 2020**, the parties shall file

6 a joint status report as outlined above.

7      Dated this 22nd day of September, 2020.

8

9

10
          Honorable Roslyn O. Silver

11
          Senior United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---
believe there are unnamed parties who should be included in this suit.

- 10 -